# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILLIAM METCALF,
      Plaintiff,

      v.

YALE UNIVERSITY,
      Defendant.

No. 15-cv-1696 (VAB)

## ORDER ON MOTION TO COMPEL

Plaintiff, William Metcalf, brings claims against the Defendant, Yale University

("Yale"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 623, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat.

§ 46a-60(a).  Before Mr. Metcalf's termination on August 29, 2014, he was employed by Yale

University and the Yale University Art Gallery.

Pending before the Court is Plaintiff's motion to compel discovery.  ECF No. 33.  Mr.

Metcalf's motion requests the production of all documents relating to certain cases or matters of

"Yale University Reports of Complaints of Sexual Misconduct for the period August 29, 2012

through and including August 29, 2014."  Pl.'s Br. at 1, ECF No. 33.  Yale objects to the

production of these documents on various grounds.  Def.'s Br., ECF No. 36.  The Court held oral

argument on this motion on February 10, 2017.  ECF No. 40.  For the reasons that follow, Mr.

Metcalf's motion to compel is **GRANTED** in part and **DENIED** in part.

Specifically, as discussed during the oral argument, Yale shall produce the documents

requested by Mr. Metcalf, but only documents maintained by Yale's Title IX office and that are

related to the following cases, as listed in the Affidavit of Jason Killheffer ("Killheffer

1

Affidavit"): in paragraph 16, the cases numbered 2, 4, 8, 12, 15, 16, 17, 21, 23, and 26; and in paragraph 17, the cases numbered 1, 2, 3, 6, 7.  *See* Killheffer Aff. ¶¶ 16-17, ECF No. 37. Production under this Order shall also be subject to the following limitations to protect the privacy of the individuals involved in each complaint: (1) any information produced in relation to Mr. Metcalf's motion to compel must have names or other identifiers of the parties redacted, instead, each party should be assigned anonymous numbers instead of being referred to by name; (2) this discovery shall be limited to "Attorneys Eyes Only," with no disclosure permitted to any other person, including Mr. Metcalf; (3) Mr. Metcalf's counsel shall make no effort to identify or interview any of the parties involved.  The parties shall also confer to draft a Protective Order outlining these requirements and further providing that if any of the parties wish to include documents produced under this Order as part of any future filing submitted to the Court, the documents should be filed under seal.  In light of these safeguards, the Court does not believe that *in camera* review of the relevant documents is necessary.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Mr. Metcalf alleges that he was previously employed for more than twelve years as a Curator of Coins and Medals at the Yale University Art Gallery and as an Adjunct Professor in the Classics Department at Yale University.  Compl. ¶ 1, ECF No. 1.  His employment at Yale was allegedly terminated on August 29, 2014.  *Id.*  At the time of his termination, Mr. Metcalf was 66 years old.  *Id.* ¶ 25.  He alleges that, through his termination, Yale violated the ADEA and CFEPA.  *Id.* ¶ 1.

On August 29, 2014, Mr. Metcalf alleges that two Yale employees presented him with a letter that summarily terminated his employment.  Compl. ¶¶ 17-18.  The letter described reasons for terminating Mr. Metcalf, reasons that he alleges are "falsehood, exaggerations, and

mischaracterizations." *Id.* ¶ 19.  Specifically, the letter cited "an inadvertent mistake" on his

part, where he "mistakenly enter[ed] a wrong bathroom and then immediately turn[ed] around

and le[ft]," as well as Mr. Metcalf's alleged use "of offensive language and profanity" *Id.*

Mr. Metcalf alleges that he eventually learned that, in terminating him, Yale may have

discriminated against him on the basis of his age.  Compl. ¶ 23.  Mr. Metcalf allegedly learned

that a Yale Art Gallery employee who had allegedly been the decision-maker in his termination,

Jock Reynolds, had informed a third party that "Mr. Metcalf would be much happier retired,"

that "[Mr. Metcalf] is getting old. He is declining physically and mentally," and that he was a

"curmudgeon." *Id.* ¶¶ 23-24.  Mr. Metcalf alleges that numerous younger professors and staff at

Yale have "used language such as Mr. Metcalf was accused of using" or have "made the mistake

of entering an incorrect bathroom," but have not been disciplined or terminated. *Id.* ¶ 26.

### A.    Motion to Compel

Mr. Metcalf's motion to compel concerns Plaintiff's Request #11 of his First Set of

Requests to Produce ("Request 11").  Pl.'s Br. at 1.  Specifically, Request 11 asks Yale to:

> Please produce (subject to protective order) all documents relating to the
> unredacted cases or matters as identified in the attached Exhibit 1, consisting of
> redacted Yale University Reports of Complaints of Sexual Misconduct for the
> period August 29, 2012 through and including August 29, 2014.

*Id.*  Yale argues, first, that Exhibit 1, which Request 11 refers to, purports to list fourteen

different cases that Mr. Metcalf extracted from Yale's Report of Complaints of Sexual

Misconduct, but that the list is "duplicative" and contains two sets of the "same seven cases,"

including Mr. Metcalf's own case, which is listed twice.  Def.'s Br. at 1-2.  Yale also notes that

Mr. Metcalf has "now added to his request a total of 26 cases," some of which were also

originally listed in Exhibit 1, which means that Mr. Metcalf is now requesting to review files for

"29 separate cases." *Id.* at 2.  Yale opposes the disclosure of these documents on various

grounds, including that the documents are highly sensitive and relate to persons who are not parties to this action.  *Id.*

At oral argument, ECF No. 40, Mr. Metcalf notified the Court that he is only seeking the production of documents related to the following cases, as listed in the Killheffer Affidavit: in paragraph 16, the cases numbered 2, 4, 8, 12, 15, 16, 17, 21, 23, and 26; and in paragraph 17, the cases numbered 1, 2, 3, 6, 7.  *See* Killheffer Aff. ¶¶ 16-17.  Mr. Metcalf also agreed that the production could be limited to the documents maintained by Yale's Title IX office, so that Yale would not need to conduct an electronic search to produce the documents.

## II.    DISCUSSION

Under Fed. R. Civ. P. 26(b)(1), the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Court has broad discretion in deciding a motion to compel discovery.  *Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) ("We will not disturb a district court's ruling on a motion to compel discovery unless there is a clear showing of abuse of discretion." (internal quotation marks omitted)).  Furthermore, the "party resisting discovery bears the burden of showing why discovery should be denied."  *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

Yale argues that Mr. Metcalf's motion to compel should be denied for various reasons. First, the documents Mr. Metcalf requests allegedly do not concern similarly situated employees that can serve as potential comparators for his employment discrimination claims.  Def.'s Br. at 7-11.  Second, the information sought in Request 11 may be protected from disclosure by the Federal Educational and Privacy Rights Act ("FERPA"), 20 U.S.C. § 1232g, and Conn. Gen. Stat. § 31-128f, in addition to larger privacy and confidentiality concerns.  *Id.* at 3-7.

4

Additionally, Yale argued that the requested discovery was overly broad and burdensome, given that Mr. Metcalf was initially requesting all documents concerning 29 different cases and that the search for all documents concerning even a single case could be extremely time-consuming and resource-intensive. *Id.* at 11-15.

A.     **Similarly Situated Comparators**

Mr. Metcalf argues that the documents concerning other Reports of Complaints of Sexual Misconduct at Yale are relevant because they discuss potential "comparators," or other Yale employees who were "similarly situated" to Mr. Metcalf, but who were allegedly treated differently. *See* Pl.'s Br. at 2; *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000). Yale argues that the documents covered by Mr. Metcalf's Request 11 do not involve potential comparators for Mr. Metcalf. Def.'s Br. at 7-8.

In employment discrimination cases, a plaintiff may make out part of his prima facie case of discrimination by showing that his termination "occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class," by "showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group," or a comparator. *Graham*, 230 F.3d at 38-39. The question of whether a potential comparator is "similarly situated" to the plaintiff "ordinarily presents a question of fact for the jury." *Id.* (citing *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 685 (2d Cir. 1998)). The Second Circuit has held that, to be a comparator, the other employee or employees "must be similarly situated in all material respects" to the plaintiff. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

What constitutes "all material respects . . . varies somewhat from case to case." *Graham*, 230 F.3d at 40.  The Second Circuit has explained that courts should evaluate this based on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.*  Thus, "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of [the] plaintiff's and comparator's cases" though it does not require a "showing that both cases are identical." *Id.*  Among other things, the potential comparator's conduct subject to potential discipline from the employer "need not be identical to that of [the plaintiff] for the two to be similarly situated." *Id.*

Yale argues that none of the documents that Mr. Metcalf requests concern individuals that are similarly situated to him. Def.'s Br. at 3.  Specifically, Yale argues that the other employee respondents discussed in the documents reported to different supervisors or worked in different departments at Yale. *Id.* at 8.

The Second Circuit has sometimes found that employees who worked under different supervisors or who were disciplined by different supervisors were not similarly situated. *See Gannon v. United Parcel Service*, 529 Fed. Appx. 102, 104 (2d Cir. 2013) (summary order) ("First, we conclude the district court correctly found Gannon was not similarly situated as a matter of law to the three employees who worked in a different division and were disciplined by a different division manager.").  A plaintiff and potential comparators, however, need not be "identical," *Graham*, 230 F.3d at 40, and the Second Circuit has also noted that a plaintiff may be sufficiently similarly situated to potential comparators with different supervisors, so long as those potential comparators were "subject to the same workplace standards and disciplinary procedures." *Berube v. Great Atlantic & Pacific Tea Co., Inc.*, 348 Fed. Appx. 684, 686 (2d Cir.

6

2009) (summary order) ("Under the standard set forth in *Graham*, the fact that [plaintiff] had a different supervisor from the employees he cites as comparators does not appear sufficient in itself to preclude [plaintiff] from showing that he was subject to the same workplace standards and disciplinary procedures.").

Defendant's response to Mr. Metcalf's motion to compel does not contest that other Yale employees are subject to the same workplace standards and disciplinary procedures with regards to reports and complaints of sexual misconduct.  *See* Def.'s Br. at 7-11.  Instead, Yale mainly argues that, even for cases involving the same Title IX Coordinators that worked on Mr. Metcalf's case, the ultimate decision-maker with regards to potential discipline was the "head of the particular work unit."  *Id.* at 9.  For Mr. Metcalf's case, that decision-maker was Mr. Reynolds, but he was not involved in any of the other cases covered by Request 11.  *Id.*

The Court agrees with Mr. Metcalf to the extent that, even if the other employee respondents did not work in the Yale Art Gallery like Mr. Metcalf, and Mr. Reynolds was not the ultimate decision-maker for any of the other employees whose files are covered by Request 11, this does not preclude Mr. Metcalf from showing that the other employees are similarly situated enough to be potential comparators.  It is still possible that Mr. Metcalf can show that the other employees were "subject to the same workplace standards and disciplinary procedures," such that a jury could determine that the other employees are sufficiently similarly situated to him. *Berube*, 348 Fed. Appx. at 686.  Thus, Mr. Metcalf's motion to compel seeks discovery "that is relevant to [his] claim or defense," because the requested documents concern potential comparators.  Fed. R. Civ. P. 26(b)(1).

Yale also requests that discovery not be ordered on any complaints of sexual misconduct involving respondents who are over the age of 40 and therefore within the class protected by the

ADEA, Def.'s Br. at 11, given that comparator evidence is generally used to show that a plaintiff was treated "less favorably than a similarly situated employee outside his protected group." *Graham*, 230 F.3d at 40.  While such documents may not relate to potential comparators, these documents could still be relevant to either parties' claims or defenses in this case.  *See* Fed. R. Civ. P. 26(b)(1).  Documents concerning the treatment of employee respondents who were also protected by the ADEA are relevant because they could be used to give rise to an inference that there is no age discrimination, if other employees besides Mr. Metcalf are treated similarly, whether or not they are over the age of 40 and protected by the ADEA.  Because such documents may be "relevant to any party's claim or defense," discovery of such documents is also allowed under Rule 26.  Fed. R. Civ. P. 26(b)(1).

The Court therefore grants Mr. Metcalf's motion to compel in part, requiring Yale to produce documents related to the following cases listed in the Killheffer affidavit: in paragraph 16, the cases numbered 2, 4, 8, 12, 15, 16, 17, 21, 23, and 26; and in paragraph 17, the cases numbered 1, 2, 3, 6, 7.  *See* Killheffer Aff. ¶¶ 16-17.  At oral argument, the parties agreed that none of these cases involved Yale students.  Many of the concerns raised by Yale regarding the privacy concerns and the proportionality of the potentially burdensome discovery that Mr. Metcalf requests are well taken.  Thus, while the Court grants Mr. Metcalf's motion to compel in part, this Order is also subject to further limitations and protective measures that will be described below.

## B.    Privacy Statutes

Yale argued that the information sought in Request 11 is protected from disclosure by the FERPA and Conn. Gen. Stat. § 31-128f, in addition to larger privacy and confidentiality concerns.  Def.'s Br. at 3-7.

### 1.  FERPA

In relevant part, FERPA prohibits "the release of education records" or "personally identifiable information contained therein other than directory information" concerning "students" without permission.  20 U.S.C. § 1232g(b)(1).  Education records under FERPA are defined as "records, files, documents and other materials" that "(i) contain information directly related to a student," and "(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution."  20 U.S.C. § 1232g(a)(4)(A).  FERPA does, however, allow the disclosure of students' educational records if "such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution."  20 U.S.C. § 1232g(2)(B); *see also* 34 C.F.R. 99.31(a)(9)(i) (allowing disclosure "to comply with a judicial order or lawfully issued subpoena").  Thus, courts have found that FERPA does not prevent the disclosure of students' educational records in connection with discovery in a case.  *See Nastasia v. New Fairfield School Dist.*, 3:04-CV-925 (TPS), 2006 WL 1699599, at *1-*2 (D. Conn. June. 19, 2006) ("FERPA permits New Fairfield to disclose a student's educational records to comply with a judicial order.").

Because the parties agreed, at oral argument, that none of the documents that Mr. Metcalf is now requesting concern cases involving a Yale student, the disclosure that the Court is now ordering does not raise any FERPA issues.  In ordering the production of documents concerning only the list of cases that Mr. Metcalf is now requesting, the Court is not ordering that any student records be produced.

## 2.     Conn. Gen. Stat. § 31-128f

Conn. Gen. Stat. § 31-128f governs employee records, providing that "[n]o individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee."  Conn. Gen. Stat. § 31-128f.  A "personnel file" under this statute includes "papers, documents and reports" "pertaining to a particular employee that are used or have been used by an employer to determine . . . disciplinary or other adverse personnel action."  Conn. Gen. Stat. § 31-128a.  As the Court is allowing the discovery of records concerning complaints alleging sexual misconduct by Yale employees, Conn. Gen. Stat. § 31-128f is relevant to the resulting disclosures.

As Mr. Metcalf notes, however, Conn. Gen. Stat. § 31-128f contains an exception allowing disclosure of employee records "pursuant to a lawfully issued administrative summons or judicial order, including a search warrant or subpoena, or in response to . . . the investigation or defense of personnel-related complaints against the employer."  Conn. Gen. Stat. § 31-128f.  Thus, courts may order the disclosure of employee documents that are relevant to a particular case as part of discovery.  *See Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 169 (D. Conn. 2005) (ordering that defendant employer produce requested responsive documents "thus satisfying the second exception to [Conn. Gen. Stat. § 31-128f]").

### 3.     Privacy and Confidentiality Concerns

Yale's arguments regarding the larger privacy and confidentiality concerns surrounding the potential disclosure of documents concerning the investigation of complaints of sexual misconduct are well taken.  *See* Def.'s Br. at 4-7.  To address those concerns, Mr. Metcalf points to the Protective Order that is in place in this case and states that he has no objection to

additional safeguards to protect the privacy interests of individuals involved.  Pl.'s Reply at 5,
ECF No. 38.  Among other possible safeguards, Mr. Metcalf proposes that any information
produced in relation to his motion to compel could be "redacted as to any names or other
identifiers of the parties concerned and they can be assigned anonymous numbers instead of
being referred to by name"; that "discovery can be limited to 'Attorneys Eyes Only,' with no
disclosure permitted to anyone else, including" Mr. Metcalf; that "depositions can be taken with
the limitation that they are 'Confidential'"; and that Mr. Metcalf's "counsel will make no effort
to identify or interview any of the parties involved."  *Id.*

The Court acknowledges the importance of the privacy concerns raised by Yale.  As
Yale's policies surrounding the investigations conducted by the Title IX office note,
confidentiality is important "to encourage parties and witnesses to participate" in the
investigations and facilitate a fair outcome.  Def.'s Br. at 6.  Yale's point that different
departments or work units at Yale are small, such that redactions alone may not be sufficient to
protect the identity of those involved, is well taken.  *Id.* at 7.  Thus, the Court's order that Yale
produce documents related to Mr. Metcalf's Request 11 is subject to the additional safeguards
and limitations that will be discussed below.

### C.   Proportionality

Yale argues that Mr. Metcalf's request for all documents related to a total of 29
complaints of sexual misconduct is overly broad and burdensome.  Def.'s Br. at 11.  Yale notes
that the only way to obtain "all documents" is through an electronic search.  *Id.*  Based on Yale's
experience with another discrimination case brought by a Yale employee, *Bagley v. Yale
University*, 3:13-cv-1890 (CSH), which involved a search for "all documents" pertaining to a
single complaint, Yale represents that such productions require electronic searches of multiple

custodians' files.  *Id.* at 11-12.  In *Bagley*, the initial electronic search generated 20.8 gigabytes of data, divided into 37,991 separate files, and required Yale's attorneys to review the equivalent of more than 2,000,000 pages of material.  *Id.* at 12.  The search process before producing the requested documents in *Bagley* took many months, and ultimately resulted in the production of 1.78 gigabytes of relevant data, representing the equivalent of over 175,000 pages of emails.  *Id.*

Yale argues that, because Mr. Metcalf is seeking documents related to a larger number of complaints, the files of at least 90 custodians would potentially need to be searched to produce "all documents."  Def.'s Br. at 12.  According to Yale the initial process of collecting the documents for their attorneys to review could "take months to complete," and the review by Yale's attorneys could take an additional "one week for each custodian" or more.  *Id.*

Rule 26 limits the parties' right to discovery to discovery that is "proportional to the needs of the case," taking into consideration factors including "the parties' relative access to relevant information, the parties' resources," and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Courts have significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources."  *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 562 (S.D.N.Y. 2013) (internal quotation marks omitted).

The Court acknowledges that discovery of "all files" potentially relevant to Mr. Metcalf's motion to compel could be extremely burdensome and time-consuming.  Discovery thus will be limited so that it is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  At oral argument, Mr. Metcalf agreed to limit his request to documents that are maintained by Yale's

Title IX office and that pertain to a subset of the cases that were part of his initial requests.  As Yale notes, the files maintained by the Title IX office "are readily accessible and contain the necessary information to determine whether the respondents are similarly situated to the plaintiff."  Def.'s Br. at 13.  The Court therefore finds that the production of documents maintained by the Title IX office is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

> ### D.       Protective Order and Safeguards

As the Court noted above, Mr. Metcalf proposes various safeguards to protect the privacy interests of the individuals discussed in the documents covered by Request 11.  Pl.'s Reply at 5. The Court agrees that the disclosure of documents under this Order should be subject to the proposed limitations in order to protect the privacy of nonparties to this case.  Thus, while the Court grants Mr. Metcalf's motion to compel the discovery of requested documents concerning the subset of cases that he listed at oral argument, these disclosures are subject to the following additional limitations:

- First, any information produced in relation to Mr. Metcalf's motion to compel must have names or other identifiers of the parties redacted, instead, each party should be assigned anonymous numbers instead of being referred to by name.

- Second, this discovery shall be limited to "Attorneys Eyes Only," with no disclosure permitted to any other person, including Mr. Metcalf.

- Third, Mr. Metcalf's counsel shall make no effort to identify or interview any of the parties involved.

Furthermore, the parties shall confer to draft a Protective Order outlining these requirements and further providing that if any of the parties wish to include documents produced

under this Order as part of any future filing submitted to the Court, the documents should be filed

under seal.

Yale has also requested that, to the extent that the Court allows the discovery of some or

all of the documents requested in Mr. Metcalf's motion to compel, that the Court first conduct an

*in camera* inspection.  Def.'s Br. at 14-15.  Because the Court has granted Mr. Metcalf's motion

only in part, subject to multiple limitations, the Court does not believe that an *in camera*

inspection is necessary.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel, ECF No. 33, is **GRANTED** in

part and **DENIED** in part.

Specifically, as discussed during the oral argument, Yale shall produce the documents

requested by Mr. Metcalf, but only documents maintained by Yale's Title IX office and that are

related to the following cases listed in the Killheffer Affidavit: in paragraph 16, the cases

numbered 2, 4, 8, 12, 15, 16, 17, 21, 23, and 26; and in paragraph 17, the cases numbered 1, 2, 3,

6, 7.  *See* Killheffer Aff. ¶¶ 16-17.  Production under this Order shall also be subject to the

following limitations to protect the privacy of the individuals involved in each complaint: (1) any

information produced in relation to his motion to compel must have names or other identifiers of

the parties redacted, instead, each party should be assigned anonymous numbers instead of being

referred to by name; (2) this discovery shall be limited to "Attorneys Eyes Only," with no

disclosure permitted to any other person, including Mr. Metcalf; (3) Mr. Metcalf's counsel shall

make no effort to identify or interview any of the parties involved.  The parties shall confer to

draft a Protective Order outlining these requirements and further providing that if any of the

parties wish to include documents produced under this Order as part of any future filing submitted to the Court, the documents should be filed under seal.

SO ORDERED at Bridgeport, Connecticut, this 15th day of February, 2017.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge