UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM METCALF,
    Plaintiff,

v.

YALE UNIVERSITY,
    Defendant.

No. 15-cv1696 (VAB)

**RULING AND ORDER ON MOTION FOR PROTECTIVE ORDER**

William Metcalf ("Mr. Metcalf" or "Plaintiff") has filed a Complaint against his former employer, Yale University ("Yale"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq. See generally* Am. Compl., ECF No. 27.

Under Federal Rule of Civil Procedure 26(c), Yale has moved for a protective order to prevent Mr. Metcalf from deposing and obtaining mental health records from Richard Yun, MD, Amy Cheng, PhD, and Michael Rigsby, MD, concerning their treatment of another Yale employee ("Yale employee"), a non-party to this litigation. ECF No. 53.

For the following reasons, the motion is **GRANTED.**

**I.    BACKGROUND**

On August 29, 2014, Yale ended Mr. Metcalf's employment as Curator of Coins and Medals of the Yale University Art Gallery. Am. Compl. ¶¶ 17–18. Mr. Metcalf alleges that the termination letter, presented by Jock Reynolds, the Director of the Yale University Art Gallery, contained "falsehoods, exaggerations and mischaracterizations" of his behavior during his

employment, specifically that he had entered the women's bathroom and used offensive language in the workplace. *Id.* at ¶17-19.

Mr. Metcalf has issued subpoenas and notices of deposition for Dr. Yun, a psychiatrist, Dr. Cheng, a psychologist, and Dr. Rigsby, an internist, requesting medical records related to their treatment of Yale employee since 2009.[1] Def.'s Br. at 2, No. 52-1. Yale employee, Mr. Metcalf's former assistant, spoke with Mr. Reynolds and a Human Resources representative, who were conducting an investigation in response to a report that Mr. Metcalf allegedly had entered the women's bathroom. *Id.* During this meeting, Yale employee allegedly discussed Mr. Metcalf's history of inappropriate behavior towards her and she allegedly informed Mr. Reynolds that, as a result of this behavior, she was being treated by a psychiatrist and taking medication for emotional distress. *Id.* It is alleged that Mr. Reynolds based his decision to terminate Mr. Metcalf, in part, on Yale employee allegedly reporting that Mr. Metcalf had caused Yale employee emotional distress. *Id.*

Mr. Reynolds and Yale employee have been deposed, and the subpoenas at issue were issued in response to Yale employee's refusal to answer certain questions, while being deposed concerning her treatment by Dr. Yun. Pl.'s Opp. Br. at 3, ECF No. 62. Dr. Yun, Dr. Cheng, and Dr. Rigsby have moved for a protective order preventing Mr. Metcalf from obtaining medical records from them concerning their treatment of Yale employee.

---

[1] The subpoena directed at Dr. Yun seeks "[a] copy of your COMPLETE medical notes/records pertaining to Yale Employee's . . . treatment from 2009 through the present." Yun Subpoena, ECF No. 52-2 at 1. The subpoenas direct at Dr. Cheng and Dr. Rigsby also request complete medical notes or records for 2011 through 2014 and for 2008 through 2014, respectively. Cheng Subpoena, ECF No. 52-2 at 7; Rigsby Subpoena, ECF No. 52-2 at 13.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26(c)(1), "[a] person for whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Where the discovery sought is relevant, the party seeking protection bears the burden of showing that good cause exists to grant the motion. *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) (citations omitted); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (citation omitted). Under Rule 45(d)(3)(A), a court is required to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

## III. DISCUSSION

Yale asserts that Yale employee's treatment records are not discoverable and that the records sought are not relevant to any party's claim or defense as required under Fed. R. Civ. P. 26(b)(1). Def.'s Br. at 3. Yale also contends that the medical records pertaining to Yale employee's treatment are protected from disclosure under federal law, since Yale employee has not authorized their disclosure. *Id.* Mr. Metcalf argues that Yale employee's medical and psychological treatment are discoverable since her medical condition was allegedly a significant factor in Mr. Reynolds's decision to terminate Mr. Metcalf. Pl.'s Opp. Br. at 4. Mr. Metcalf further asserts that Yale employee has waived her privilege by discussing her medical condition with Mr. Reynolds while being deposed. *Id.* at 7. The Court disagrees and will address each argument in turn.

The scope of discovery, unless limited by court order, includes:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under this standard, this Court must determine whether the discovery sought is proportional to the needs of the case. *See, e.g.*, *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 40 (2d Cir. 2017) (affirming a discovery ruling where the district court was satisfied "that any . . . proportionality threshold[] [had been] met").

Even if relevant to this case, the discovery of medical records concerning Yale employee's treatment for emotional distress is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Mr. Reynolds did not review Yale employee's medical records or speak with either Dr. Yun, Dr. Cheng, or Dr. Rigsby, in making his decision to terminate Mr. Metcalf. *See* Reynold's Dep. at 143:5–11, Pl.'s Opp. Brief, Ex. E., ECF No. 62-1 ("I knew she was taking some kind of medication and I didn't ask what it was. I just judged the state of her physical emotional wellbeing in that meeting. And that of what her concerned husband had to say.") And Mr. Metcalf does not argue anything different. *See* Pl.'s Opp. Br. at 3 ("Reynolds claims that he concluded, because of this meeting with Yale employee, that she was under doctors' care and taking medication *because of Mr. Metcalf's conduct*." (citing Reynold's Dep. at 129–31, 143).

Indeed, it is Mr. Reynolds' state of mind, rather than Yale employee's, that is at issue here. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (stating that an ADEA discrimination case invariably means that "intent and state of mind are in dispute"); *Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 285 (D. Conn. 2008) (granting summary judgment after finding comment by supervisor as insufficient to demonstrate her "discriminatory

4

state of mind"); *see also Feliciano v. Autozone, Inc.*, 111 A.3d 453, 459 (Conn. 2015) ("[Connecticut Courts] look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). Whether and how Yale employee was being treated for emotional distress related to Mr. Metcalf is immaterial in assessing Mr. Reynold's state of mind in deciding to terminate Mr. Metcalf. The critical inquiry is Mr. Reynold's state of mind, as the "sole decision maker," not Yale employee's.

In any event, Mr. Reynolds' decision also stemmed from another female employee's report that Mr. Metcalf had allegedly entered the women's bathroom. Def.'s Br. at 3. This investigation also uncovered other alleged behavior Mr. Metcalf exhibited towards a post-doctoral student, a graduate curator intern, and Yale employee. *Id.* at 4. Mr. Reynolds's decision to terminate Mr. Metcalf's employment, based in part on his independent judgment of Yale employee's emotional distress as it allegedly related to Mr. Metcalf's conduct, does not entitle Mr. Metcalf to litigate the severity or validity of Yale employee's alleged emotional distress. The Court therefore concludes that the discovery Mr. Metcalf seeks is disproportionate to his needs in proving his case. *See In re Catalyst Managerial Servs., DMCC*, 680 F. App'x at 40.

Yale also argues that Yale employee's mental health records are protected under the psychotherapist-patient privilege. Def.'s Br. at 7. Mr. Metcalf argues that Yale employee, in telling Yale "or anyone else other than her doctors anything about her psychotherapeutic or medical treatment," has waived "an expectation of privacy on those subjects and waived whatever privilege she might have had." Pl.'s Opp. Br. at 7–8.

Since the Court has determined that Mr. Metcalf is not entitled to these records because their contents are out of "proportion[] to the needs of the case," Fed. R. Civ. P. 26(b)(1), Yale has demonstrated good cause for entry of a protective order, and the Court need not and does not

address any of the privilege and waiver arguments made by the parties or the applicability of HIPAA.

## IV. CONCLUSION

For the reasons discussed above, the motion for a protective order is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of December, 2017.

                                                    /s/ Victor A. Bolden
                                           VICTOR A. BOLDEN
                                           UNITED STATES DISTRICT JUDGE