UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

WILLIAM METCALF,
    *Plaintiff*,

v.

YALE UNIVERSITY,
    *Defendant*.

No. 15-cv-1696 (VAB)

**RULING AND ORDER ON MOTION TO DISQUALIFY COUNSEL
AND MOTION FOR PROTECTIVE ORDER**

On October 24, 2018, eight days before the parties' deadline to submit a joint trial memorandum, Yale University ("Defendant" or "Yale") moved to disqualify the counsel of William Metcalf ("Plaintiff") for alleged violations of Connecticut Rule of Professional Conduct 4.2. *See* Motion to Disqualify, dated Oct. 24, 2018 ("Disqual. Mot."), ECF No. 98. Yale also moved for a protective order. *See* Motion for Protective Order, dated Oct. 24, 2018 ("Mot. for Prot. Ord."), ECF No. 99.

For the following reasons, the motion to disqualify counsel is **DENIED**, without prejudice to renewal, and the motion for a protective order is **DENIED** as moot, without prejudice to renewal.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Metcalf, a former Curator of Coins and Medals at the Yale University Art Gallery, alleges that Yale discriminatorily terminated him due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. § 46a-60 *et seq. See* Amended

Complaint, dated Mar. 22, 2016 ("Am. Compl."), ECF No. 27, ¶¶ 28–41. Specifically, Mr. Metcalf alleges that Jock Reynolds, the Director of the Yale University Art Gallery, "summarily terminated his employment as Curator" on August 29, 2014. *Id.* ¶¶ 17–18.

In Yale's motion to disqualify, Yale alleges that Ethan Levin-Epstein, Esq., one of Mr. Metcalf's attorneys, telephoned Classics Professor Kirk Freudenburg on August 30, 2018. Memorandum of Law in Support of Disqual. Mot., dated Oct. 24, 2018 ("Yale Mem."), ECF No. 99-1, at 2. During his employment with Yale, Mr. Metcalf was also appointed as an Adjunct Professor in the Classics Department. *Id.* at 1–2; Am. Compl. ¶ 1. Yale alleges that Professor Freudenburg served as Mr. Metcalf's supervisor with respect to his role in the Classics Department, and that he participated in Mr. Metcalf's termination from that department. Yale Mem. at 2.

Yale alleges that, after Mr. Levin-Epstein reached Professor Freudenburg, Mr. Levin-Epstein interviewed Professor Freudenburg for thirty-four minutes about the case. *Id.* Mr. Levin-Epstein's paralegal, Deborah French, was also allegedly on the call and "undoubtedly taking notes." *Id.* Yale claims that Professor Freudenburg did not appreciate the significance of the situation, did not take notes, and did not call Yale's counsel right away; thus, Yale's counsel only learned of the interview from Professor Freudenburg a month and a half later. *Id.* at 2–3.

Yale argues that Professor Freudenburg is properly considered a represented party under Connecticut Rule of Professional Conduct 4.2 ("Rule 4.2"). *Id.* at 4–5. Yale argues that where an organization is a party, three classes of employees are also considered parties: "(1) any employee having managerial responsibility; (2) any employee whose act or omission may be imputed to the employer for purposes of liability; and (3) any employee whose statement may constitute an admission on the part of the employer." *Id.* at 5 (citing Official Commentary to Rule 4.2). Yale

alleges that, during the interview, Mr. Levin-Epstein "inappropriately obtained confidential information of a party in direct violation" of Rule 4.2. *Id.* at 2.

In support of its motion, Yale submitted an affidavit from Professor Freudenburg, who provides this account of the call:

> On August 30, 2018 I received a telephone call from Attorney Ethan Levin-Epstein who identified himself as Mr. Metcalf's lawyer and stated he wished to ask me some questions. He mentioned that an assistant by the name of Ms. French was on the phone with him. I responded that I was busy and did not have time, but he persisted, telling me that he just had "a few questions." He immediately began questioning me about the termination of Mr. Metcalf and the extent of my involvement in it. The conversation lasted 34 minutes, based on the information on my cell phone. At no time did Attorney Levin-Epstein suggest that I call Yale's lawyers to determine whether I should participate in this interview. I had not been involved in a lawsuit before and it did not occur to me during the interview that I needed to consult with Yale's lawyers before answering questions.

Affidavit of Kirk Freudenburg, dated Oct. 23, 2018, ECF No. 100, ¶ 5.

Mr. Metcalf does not dispute that this interview occurred. *See* Plaintiff's Memorandum of Law in Opposition to Disqual Mot. and Mot. for Prot. Order, dated Nov. 9, 2018 ("Pl.'s Opp."), ECF No. 105, at 1.

Mr. Metcalf claims that counsel telephoned Professor Freudenburg "in anticipation of calling him as a witness" at trial, and to "confirm Freudenburg's [previous] testimony at the grievance hearing." Pl.'s Opp. at 6. Mr. Metcalf argues that Professor Freudenburg was not involved in Yale's decision to terminate:

> Contrary to Yale's representations, Freudenburg's only involvement with Metcalf's employment in Classics was to try to extend it as long as possible, not to terminate it . . . . rather than being involved in the decision to terminate Metcalf, Freudenburg actually tried to help Metcalf as much as he could, ensuring that he would get paid and receive benefits through 2014. Freudenburg's effort to keep Metcalf "as is" in the Classics Department as long as

3

> possible was then approved by Yale HR. The document Yale
> offered as evidence of Freudenburg being "involved in the
> termination process" is evidence, in reality, of exactly the opposite.
> Far from participating in the termination decision, Freudenburg
> tried to ease Metcalf's departure from Classics. That departure was
> inevitable, though, because Classics simply lacked the financial
> resources to pay Metcalf past the end of the year.

*Id.* at 4–5. Mr. Metcalf further notes that in interrogatory responses, Yale never previously identified Professor Freudenbrug as a person with material knowledge of the reasons for the termination or as a decision-maker with any input into the termination. *Id.* at 5.

Mr. Metcalf alleges that Professor Freudenburg's prior testimony at an internal University grievance hearing had been favorable to Mr. Metcalf's case. *Id.* at 5–7. In essence, he claims that counsel viewed Professor Freudenburg as Mr. Metcalf's witness, not Yale's, and was simply calling him to go over that testimony with him. *See id.*

Finally, Mr. Metcalf alleges that no confidential information of Yale was ever sought or disclosed during the Freudenburg interview. *Id.* at 6 ("At no time was Freudenburg asked to discuss anything about defense strategy, conversations he had with defense counsel, or anything concerning the defense of the case. At no time did he volunteer such information.").

### B. Procedural History

On October 24, 2018, Yale moved to disqualify Mr. Metcalf's attorneys. Disqual. Mot. Yale simultaneously moved for a protective order to prevent Mr. Metcalf and his attorneys from "making any reference to the content of the interview of Professor Freudenburg" in their opposition to Yale's motion. Mot. for Prot. Ord. at 1.

On October 25, 2018, the Court held a telephone conference on the motion and set an expedited briefing schedule. Minute Entry, dated Oct. 25, 2018, ECF No. 102; Amended Scheduling Order, dated Oct. 25, 2018, ECF No. 103. During the call, the Court determined that

4

it was not necessary to immediately decide the motion for a protective order as the content of the conversation did not appear relevant to deciding the disqualification motion. Plaintiff's counsel also agreed not to explicitly reference or quote any specifics about the content of the conversation with Professor Freudenburg in their opposition to Yale's motion.

On November 9, 2018, Mr. Metcalf filed an opposition to both motions. Plaintiff's Memorandum in Opposition, dated Nov. 9, 2018 ("Pl.'s Opp."), ECF No. 105. Yale filed a reply on November 16, 2018. Reply, dated Nov. 16, 2018 ("Yale Reply"), ECF No. 106. Mr. Metcalf moved for leave to file a sur-reply on November 19, 2018, attaching his proposed sur-reply. Motion for Leave to File a Sur-Reply, dated Nov. 19, 2018, ECF No. 108; Plaintiff's Sur-Reply, dated Nov. 19, 2018 ("Pl.'s Sur-Reply"), ECF No. 108-1.

The Court held oral argument on November 20, 2018. Minute Entry, dated Nov. 20, 2018, ECF No. 109. The Court granted the motion for leave to file a sur-reply, but reserved decision on the disqualification motion and the motion for a protective order. *Id.*

## II. STANDARD OF REVIEW

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). In determining whether to disqualify an attorney, the Court must balance "a client's right freely to choose his counsel" against "the need to maintain the highest standards of the profession." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

The Second Circuit has "shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct," *Nyquist*, 590 F.2d at 1246, as "[t]he business of the [district] court is to dispose of litigation and not to act as a general overseer of the ethics of those

who practice here unless the questioned behavior taints the trial of the cause before it," *W. T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) (citation omitted). "This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons." *Nyquist*, 590 F.2d at 1246 (citations omitted). The Second Circuit has further underscored its serious concern that, "notwithstanding any salutary effect on attorney ethics or the appearance of fairness, dismissal or disqualification for violations of ethical rules may impede the pursuit of meritorious litigation to the detriment of the justice system." *United States v. Quest Diagnostics*, 734 F.3d 154, 166 (2d Cir. 2013) (citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 236 (2d Cir. 1977)).

Thus "a violation of professional ethics does not . . . automatically result in disqualification of counsel." *W.T. Grant*, 531 F.2d at 677 (citation omitted). "[S]uch relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Data Capture Solutions Repair & Remarketing, Inc. v. Symbol Techs., Inc.*, No. 3:07-cv-237 (JCH), 2008 WL 4681676, at *5 (D. Conn. Oct. 17, 2008) ("Mere violation of the rules is not enough to warrant disqualification, especially without proof of trial taint.").[1]

Courts are instead required to balance ethical and other competing concerns "by limiting remedies for ethical violations to those necessary to avoid taint[ing] the underlying trial." *Quest Diagnostics*, 734 F.3d at 166 (citations and internal quotation marks omitted). "Thus, a party's

---

[1] The District of Connecticut "recognizes the authority of the 'Rules of Professional Conduct,' as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut." D. Conn. L. Civ. R. 83.2(a)(1).

6

burden in seeking to disqualify opposing counsel is high, and a court tasked with resolving such a motion must proceed with care." *Xiao Hong Liu v. VMC East Coast LLC*, No. 16 CV 5184 (AMD)(RML), 2017 WL 4564744, at *3 (E.D.N.Y. Oct. 11, 2017) (collecting cases); *see also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 ("[T]he moving defendants bear the heavy burden of proving facts required for disqualification.") (citation omitted).

## III. DISCUSSION

### A. Motion for Disqualification

Ultimately, Mr. Metcalf and his counsel concede that the conversation violated Rule 4.2:

> After reading Yale's motion and reviewing Rule 4.2 and its Commentary closely in light of Yale's allegation, we concede that the conversation was an inadvertent technical violation of the Rule. It was inadvertent because, in light of Freudenburg's history with Metcalf and the fact that he voluntarily testified on his behalf at the grievance hearing, we properly identified Freudenburg as a Plaintiff's witness. It was technical because there was no intent or effort to obtain an unfair advantage by interviewing a person we appropriately considered to be a witness favorable to our client and willing to be a witness for him. The conversation did not prejudice Yale in any way, and Yale has produced no evidence of prejudice.

Pl.'s Opp. at 7. Because Mr. Metcalf and his attorneys have conceded that Mr. Levin-Epstein's conduct violated Rule 4.2, the Court may assume for the purposes of deciding this motion that Rule 4.2 was violated, and that the standards of professional conduct expected of lawyers practicing in this District therefore were violated.

The only question remaining before the Court is whether disqualification is necessary to avoid tainting the underlying trial, or whether some other remedy short of disqualification will be sufficient to avoid any trial taint.

Yale argues that disqualification is the only viable remedy here because any other remedy would effectively leave the violation unpunished—and therefore fail to deter future violations of Rule 4.2. *See* Yale Reply at 5 ("The Court must fashion a remedy that is severe enough to

7

discourage both plaintiff's counsel and others from engaging in future violations of Rule 4.2."), 12 ("No court has ever countenanced such behavior; to the contrary, the courts are uniform in holding that an intentional violation of the Rule, such as occurred in this case, must be met with appropriate sanctions. In this case, there is simply no sanction available other than disqualification.").

In response, Mr. Metcalf argues that disqualification is an extreme remedy that is not warranted here, as Yale has not met its burden of showing that the violation resulted in Mr. Metcalf's attorneys gaining access to relevant privileged or confidential information such that the underlying trail taint can only be cured through disqualification. Pl.'s Opp. at 7–9, 10; Pl.'s Sur-Reply at 4 ("[O]ther than speculation Yale has provided no proof, much less met its 'heavy burden' to show either prejudice or, more importantly, a significant risk of trial taint.") (quoting *Evans*, 715 F.2d at 794).

The Court agrees that disqualification is not necessary now, given the limited record before the Court, but finds that an alternative sanction—requiring Mr. Metcalf's attorneys to turn over the notes of their interview to Yale—is both necessary and warranted here.

The need to deter unethical conduct should not trump other concerns here. As the Second Circuit has repeatedly emphasized, the Court's primary role is to assess whether a violation of an ethical rule has tainted the trial before it, and to order those remedies it deems necessary to avoid that taint. *See United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988) (quoting *W.T. Grant*, 531 F.2d at 677 ("The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it.")); *Lefrak v. Arabian Am. Oil Co.*, 527 F.2d 1136, 1141 (2d Cir. 1975) ("The trial judge then had the obligation to insure that the cases pending before him were not tainted by

8

the unethical conduct brought to his attention. He addressed himself to that task and conducted the evidentiary hearing described. We find no abuse of discretion at all but rather the exercise of prudence. The argument that others may be solicited is either a matter for another court when those plaintiffs surface or for the bar association. To conduct the broad investigation sought here, aside from its irrelevancy to the remedy of disqualification, in effect transforms the trial judge into the Grievance Committee of the bar association which is certainly not his function.").

At oral argument, Yale argued that the Second Circuit has never addressed a Rule 4.2 violation, which Yale contends is a more serious violation that warrants per se disqualification. The Court finds no support, however, for the notion that Rule 4.2 violations should be treated any more stringently than other ethical violations. In fact, the Second Circuit has addressed clear violations of New York's version of Rule 4.2 in a case where a plaintiff's counsel telephoned defendant's employees, did not identify himself, and requested information so he could determine whether jurisdiction and venue could be established in the Eastern District of New York. *See Ceramco, Inc. v. Lee Pharms.*, 510 F.2d 268, 269–70 (2d Cir. 1975). In that case, the Second Circuit concluded that

> while counsel's behavior is not to be commended, it is not the kind of conduct which should result in disqualification of counsel or nullification of prior proceedings. Although it would have been better if Towell had identified himself in his calls or had used an independent investigation agency, it would be too harsh to rule that the action of counsel in telephoning defendant's employees to obtain non-privileged, relevant, and accurate information as to jurisdiction and venue constituted actual wrongdoing. Ceramco's inquiries were limited in scope to those items of information necessary to ascertain whether suit could be instituted in the chosen forum and there is no suggestion that counsel sought any unfair advantage by his inquiries.

*Id.* at 271. *Ceramco* therefore strongly suggests that Rule 4.2 violations are not to be treated more seriously than other violations of the Rules of Professional Conduct.

The primary trial taint concern is that Mr. Levin-Epstein's conduct has allowed Mr. Metcalf and his counsel to improperly obtain confidential information about Yale's litigation strategy from Professor Freudenburg. Mr. Metcalf disputes that Professor Freudenburg was privy to such information, arguing that he was and remains a witness whose testimony will primarily support Mr. Metcalf's case. Mr. Metcalf also insists, however, that no confidential information regarding Yale's litigation strategy was sought from or disclosed by Professor Freudenburg.

Yale, on the other hand, contends that Professor Freudenburg was, in fact, privy to confidential information about Yale's litigation strategy. Yale Reply at 4 ("In fact, defense counsel had already met with Professor Fruedenburg to discuss the case, as well as trial strategy, well prior to August 30, 2018 . . . ."). Yale insists that Mr. Metcalf's counsel has obtained that information, and that "[t]here is no practical way to prevent plaintiff's counsel from using the information he improperly obtained" absent disqualification. *Id.* at 12.

Recognizing that the Court cannot simply take their assurances at face value, Mr. Metcalf and his counsel have suggested an alternative remedy: of having this Court conduct an *in camera* review of the notes of Mr. Levin-Epstein's conversation with Professor Freudenburg. Pl.'s Sur-Reply at 5 ("We believe that the Court's original opinion, that it need not review Attorney Levin-Epstien's summary of the conversation, should change. Because the only basis for disqualification advanced by Yale concerns the information 'extracted' from Professor Freudenburg, the Court's review will demonstrate no support for disqualification. We will offer it for in camera review.").

The Court does not find that an *in camera* review would sufficiently cure the trial taint concerns raised by Mr. Levin-Epstein's conduct, as Yale is ultimately in the best position to understand the nuances of what could be considered confidential litigation strategy. The Court

The primary trial taint concern is that Mr. Levin-Epstein's conduct has allowed Mr. Metcalf and his counsel to improperly obtain confidential information about Yale's litigation strategy from Professor Freudenburg. Mr. Metcalf disputes that Professor Freudenburg was privy to such information, arguing that he was and remains a witness whose testimony will primarily support Mr. Metcalf's case. Mr. Metcalf also insists, however, that no confidential information regarding Yale's litigation strategy was sought from or disclosed by Professor Freudenburg.

Yale, on the other hand, contends that Professor Freudenburg was, in fact, privy to confidential information about Yale's litigation strategy. Yale Reply at 4 ("In fact, defense counsel had already met with Professor Fruedenburg to discuss the case, as well as trial strategy, well prior to August 30, 2018 . . . ."). Yale insists that Mr. Metcalf's counsel has obtained that information, and that "[t]here is no practical way to prevent plaintiff's counsel from using the information he improperly obtained" absent disqualification. *Id.* at 12.

Recognizing that the Court cannot simply take their assurances at face value, Mr. Metcalf and his counsel have suggested an alternative remedy: of having this Court conduct an *in camera* review of the notes of Mr. Levin-Epstein's conversation with Professor Freudenburg. Pl.'s Sur-Reply at 5 ("We believe that the Court's original opinion, that it need not review Attorney Levin-Epstien's summary of the conversation, should change. Because the only basis for disqualification advanced by Yale concerns the information 'extracted' from Professor Freudenburg, the Court's review will demonstrate no support for disqualification. We will offer it for in camera review.").

The Court does not find that an *in camera* review would sufficiently cure the trial taint concerns raised by Mr. Levin-Epstein's conduct, as Yale is ultimately in the best position to understand the nuances of what could be considered confidential litigation strategy. The Court

instead finds that the best remedy is for Mr. Metcalf to immediately turn over the notes and/or recordings of Mr. Levin-Epstein's conversation with Professor Freudenburg, as transcribed and/or recorded by Mr. Levin-Epstein's paralegal.

Because this sanction is the only one necessary, on the facts presented here, to avoid the prospect of trial taint, Yale's motion to disqualify Mr. Metcalf's counsel is denied without prejudice. Should Yale discover, upon reviewing the notes, that Mr. Metcalf's counsel improperly obtained confidential information from Professor Freudenberg, it may renew its motion or seek other relief as may be necessary to cure the trial taint. *See Fisher Studio v. Loew's Inc.*, 232 F.2d 199, 204 (2d Cir. 1956) (noting that "if further facts justifying disqualification appear, the district court is at liberty to take such action as it deems appropriate.").

### B. Motion for Protective Order

Because the disqualification motion has been fully briefed, and because the Court has had the full opportunity to review and decide its merits in this Order, the Court finds that there is no longer any need for the requested protective order preventing Mr. Metcalf from referencing the content of the Freudenburg interview.

The motion for a protective order therefore is denied as moot, without prejudice to renewal should Yale's review of the conversation notes reveal a need to renew its disqualification motion.

## IV. CONCLUSION

For the reasons discussed above, the motion to disqualify Mr. Metcalf's counsel and the motion for a protective order are **DENIED**, without prejudice.

Instead, to ensure that Plaintiff's counsel's conduct does not taint the upcoming trial, Mr. Metcalf's counsel is ordered to turn over to Yale all notes and/or recordings of Mr. Levin-

Epstein's conversation with Professor Freudenburg. These documents shall be produced to Yale no later than the close of business on December 7, 2018.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of November, 2018.

                                                          /s/ Victor A. Bolden
                                                          Victor A. Bolden
                                                          United States District Judge